IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

TIMOTHY HANK JACKSON                                                                PLAINTIFF

v.                          Civil No. 4:12-cv-04023

JOHNNY WEAVER; WAYNE
KISSELBURG; JOSEPH BEAVERS;
CAROL PRUITT; RAY MARTIN; and
DEPUTY MISSY                                                                        DEFENDANTS

**REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**

Plaintiff Timothy Jackson filed this civil rights case pursuant to 42 U.S.C. § 1983. He proceeds *pro se* and *in forma pauperis*. Pursuant to the provisions of 28 U.S.C. § 636(b)(1) and (3)(2011), the Honorable Susan O. Hickey, United States District Judge, referred this case to the undersigned for the purpose of making a report and recommendation.

Currently before the Court is Separate Defendants, Wayne Kissleberg, Carol Pruitt, Ray Martin, and Robert Missy's Motion for Summary Judgment (ECF No. 62). Plaintiff filed a Response to Motion For Summary Judgment (ECF No. 70); Brief in Support (ECF No. 71); and Statement of Facts (ECF No. 68). After considering all of the briefing the undersigned makes the following Report and Recommendation. diverge

I.      BACKGROUND

Plaintiff originally filed his Complaint in the Eastern District of Arkansas on March 2, 2012. ECF No. 2. The case was properly transferred to this Court on March 13, 2012. ECF No. 5. The Court granted Plaintiff's multiple Motions to Amend Complaint on July 27, 2012 (ECF

No. 15) and Plaintiff filed his Amended Complaint on August 3, 2012 (ECF No. 17). In his Amended Complaint, Plaintiff first alleges the events of his February 15, 2012 arrest violated his constitutional rights. Plaintiff claims Separate Defendant Missy[1] hit him with his patrol car two times and ran over him while Plaintiff was fleeing on foot. ECF No. 17, p. 5. Separate Defendant Kisselburg, the Nevada County Detention Center ("NCDC") Jail Administrator, then drove Plaintiff to the NCDC. Separate Defendant Kisselburg called for paramedics while in route to the NCDC. Once at the NCDC, Plaintiff was stripped and pictures where taken of his wounds. Plaintiff was then taken to a local health clinic where his wounds were treated. ECF No. 17, p. 7.[2]

Plaintiff also claims he was denied the use of the law library at the NCDC by Separate Defendant Kisselburg and Pruitt. ECF No. 14, p. 7. Additionally, Plaintiff claims that he was denied outside recreation for several days and when he was given outside recreation, Separate Defendant Martin made him where leg shackles, belly chain and handcuffs. ECF No. 17, p. 7. Plaintiff filed a grievance to Separate Defendant Kisselburg regarding this incident. Plaintiff also claims he was denied indoor recreation. ECF No. 17, p. 8.[3]

Separate Defendants filed their Motion for Summary Judgment on September 12, 2013. ECF No. 62. The Court subsequently sent Plaintiff a Notice directing him to inform the Court if

---

[1] Plaintiff originally named a John Doe, Nevada County Sheriff's Deputy in his Amended Complaint and this John Doe was later identified as Deputy Robert Missy. ECF No. 38.

[2] Plaintiff makes additional claims related to dog bites received during his arrest against Separate Defendants Beavers and Weaver, however, these Defendants have not moved for summary judgment, and therefore, those claims are irrelevant for purposes of this Report and Recommendation.

[3] Plaintiff also made claims against Sheriff Danny Martin and claimed official capacity claims against all Separate Defendants in his Amended Complaint but those claims were dismissed through the screening process. ECF No. 25.

he would like assistance, through a questionnaire, in responding to Defendants' Motion for Summary Judgment.  ECF No. 65.  Plaintiff responded notifying the Court that he would file his own response to Separate Defendants' Motion without the aide of the Court.  ECF No. 69.  Plaintiff did so on September 23, 2013.  ECF Nos. 68, 70-71.

## II.     LEGAL STANDARD

The Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "[A] genuine issue of material fact exists if: (1) there is a dispute of fact; (2) the disputed fact is material to the outcome of the case; and (3) the dispute is genuine, that is, a reasonable jury could return a verdict for either party."  *RSBI Aerospace, Inc. v. Affiliated FM Ins. Co.,* 49 F.3d 399, 401 (8th Cir. 1995).  The moving party has the burden of showing the absence of a genuine issue of material fact and that they are entitled to judgment as a matter of law, but the nonmoving party may not rest upon mere denials or allegations in the pleadings and must set forth specific facts to raise a genuine issue for trial.  *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986).  The Court must view all evidence and inferences in a light most favorable to the nonmoving party.  *See McCleary v. ReliaStar Life Ins. Co.,* 682 F.3d 1116, 1119 (8th Cir. 2012).  However, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."  *Scott v. Harris*, 550 U.S. 372, 380 (2007).

## III.    DISCUSSION

### A.     Excessive Force

Plaintiff alleges Separate Defendant Missy ("Missy") used excessive force against him by twice striking and running him over with his patrol car. Separate Defendants allege Missy did not subject Plaintiff to excessive force on February 15, 2012 during his arrest.

A claim that an officer used excessive force against a free citizen in the course of an "arrest, investigatory stop, or other seizure" is properly analyzed under the "objective reasonableness standard" of the Fourth Amendment. *Graham v. Connor,* 490 U.S. 386, 397 (1989) (internal quotations omitted). The relevant inquiry being whether the official's actions are "objectively reasonable in light of the facts and circumstances confronting [him]." *Id.* The reasonableness of the use of force is "judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Johnson v. Carroll,* 658 F.3d 819, 826 (8th Cir. 2011) (quoting *Graham,* 490 U.S. at 396). In determining the reasonableness of a particular use of force, the Court should consider the particular circumstances of each case, including (1) "the severity of the crime at issue;" (2) "whether the suspect poses an immediate threat to the safety of the officer or others;" and (3) "whether he is actively resisting arrest or attempting to evade arrest by flight." *Shannon v. Koehler,* 616 F.3d 855, 862 (8th Cir. 2010). A *de minimis* use of force will not support an excessive force claim. *Id.* (citing *Hunter v. Namanny,* 219 F.3d 825, 832 (8th Cir. 2000).

Further, there are certain circumstances that necessitate the use of deadly force while attempting to detain fleeing suspects. *See, e.g., Scott v. Harris*, 550 U.S. 372, 380 (2007) (an officers use of deadly force by using his patrol car to force a fleeing suspect's car off the road was deemed reasonable because of the substantial and immediate risk of serious physical injury posed to others by the suspects actions)*; Brosseau v. Haugen,* 543 U.S. 194 (2004) (holding an officer

was entitled to qualified immunity for shooting a fleeing suspect); *but see, e.g., Tennessee v. Garner,* 471 U.S. 1, (1985) (holding the killing of an unarmed burglar to prevent his escape was an unconstitutional seizure). When, however, "the suspect poses no immediate threat to the officer and no threat to others, the harm resulting from failing to apprehend him does not justify the use of deadly force." *Moore v. Indehar,* 514 F.3d 756, 762 (8th Cir. 2008) (internal quotations omitted)). Courts have deemed certain uses of a patrol car or police cruiser in pursuit of fleeing suspects as the use of deadly force. *See Scott v. Harris,* 550 U.S. 372 (2007) (officer that terminated a high-speed chase of suspect's car by using his patrol car bumper to push the suspects car off the highway); *Gailard v. City of Satsuma*, Civil No. 12-0228, 2013 WL 1219549 (S.D. Al. March 25, 2013) (officer striking a fleeing suspect with his patrol car after the suspect ran from a stopped vehicle).

  The record indicates Missy was one of many officers attempting to arrest Plaintiff as part of an ongoing burglary investigation on February 15, 2012. During this investigation, Missy was informed of the type of vehicle Plaintiff would be riding in and also that Plaintiff would likely attempt to flee when a traffic stop was initiated on the vehicle. Because of Plaintiff's propensity to flee, Missy was instructed to pull his patrol care along side the vehicle Plaintiff was riding in to block Plaintiff's exit. As Missy initiated the traffic stop, he pulled his patrol car to the passenger side of the vehicle to block Plaintiff's exit. At the same time Plaintiff exited the vehicle in an attempt to flee. ECF No. 63-1.

  It is at this point parties version of events diverge. According to Missy's incident report, he applied his brakes when Plaintiff exited the vehicle but he was unable to avoid striking Plaintiff with the front of his patrol car. Upon impact, Plaintiff fell to the ground but immediately jumped

up and ran into the woods. Missy, still in his patrol car, pursued Plaintiff to the wood line where he then exited his patrol car and pursued Plaintiff on foot. ECF No. 63-1. There is no mention in Missy's report of him striking Plaintiff a second time or running over him with the patrol car.

Plaintiff declares, under penalty of perjury, that he was struck twice by Missy with the patrol car. Further, Plaintiff states in his declaration that in both instances he heard Missy accelerate the patrol car prior to impact. Plaintiff also declares that at no time did Missy attempt to brake the vehicle. After the first strike, Plaintiff attempted to flee into the woods and Missy again accelerated his patrol car "striking and running over" Plaintiff a second time. ECF No. 71, p. 3. Plaintiff then crawled from under the patrol car and into the woods. ECF No. 71, p. 3.[4] The record also includes photographs of Plaintiff's injuries taken on February 15, 2012. ECF No. 68, p. 19-22. These photos indicate Plaintiff suffered injuries to his legs, face and head, back and shoulders, and arm. Lastly, the record includes medical records from the NCDC indicating he was complaining of back pain from being struck by a vehicle. ECF No. 68, p. 14.

Separate Defendants argue that Missy striking Plaintiff the first and only time was unavoidable, therefore, it does not amount to excessive force. Further, Separate Defendants argue that Plaintiff's allegation that Missy struck him a second time and ran over him are "too farfetched

---

[4] The Court notes this version of events came from Plaintiff's "Declaration Under Penalty of Perjury" attached to his Memorandum Brief in Support of his Response in Opposition to Separate Defendants' Motion for Summary Judgment. ECF No. 71. The record also contains a separate "Declaration" submitted by Plaintiff with his Statement of Facts. ECF No. 68, p. 9. In the Statement of Facts Declaration, Plaintiff states he exited the vehicle he was riding in an attempt to flee and heard Missy rapidly accelerate his patrol car. Plaintiff then felt the impact of the patrol car on his back and was sent flying into the air. Plaintiff then attempted to get up and was "completely ran over" by Missy's patrol car." ECF No. 68, p. 9. The Court believes both declarations, while composed differently, convey that Plaintiff's version of the events include Missy accelerating in order to strike Plaintiff, Missy striking plaintiff twice, and Plaintiff being "run over."

to have any believability." In support of this second argument, Separate Defendants point out that no reports from Plaintiff's doctors visits in the days following his arrest mention any visible injuries aside from those received from the K-9 encounter. According to Separate Defendants, "[c]ommon sense dictates that a person who had just been run over by a car would either be dead or have very serious injuries requiring hospitalization."[5]  ECF No. 63, p. 6.

The Court finds there are material issues of fact as to whether Missy's actions amounted to the use of excessive force. Specifically, there are issues of fact concerning whether Missy accelerated his patrol car to strike Plaintiff intentionally, whether Missy struck Plaintiff a second time, whether Missy "ran over" Plaintiff, and whether Plaintiff, while fleeing, posed a risk to others. All of these facts are material to a determination of whether Missy's actions were reasonable under the Fourth Amendment. *See Scott v. Harris,* 550 U.S. 372 (2007); *Moore v. Indehar,* 514 F.3d 756, 762 (8th Cir. 2008).

Separate Defendants' argument that Plaintiff's claims are "too farfetched to have any believability" is unconvincing as they have failed to show that Plaintiff's version of the events are "blatantly contradicted by the record, so that no reasonable jury could believe it." *Scott v. Harris*, 550 U.S. 372, 380 (2007). The record is devoid of any affidavit or declaration by Missy or other witness stating Plaintiff was not struck a second time or run over by Missy. Further, along with his sworn declarations stating he was intentionally struck twice and ran over, Plaintiff submitted pictures of his injuries taken on February 15, 2012 and medical logs from the NCDC in response to Separate Defendant's Motion. While some of the injuries evidenced in the pictures and medical logs are clearly the result of the dog bites not in issue here, the origin of other injuries are less clear.

---

[5] Separate Defendants fail to cite any law to support either of their arguments.

Furthermore, how Plaintiff is using the term "run over" is ambagious. It is unclear to the Court whether Plaintiff alleges he was merely knocked underneath Missy's patrol car when he was struck (thus necessitating he crawl from underneath the car to continue fleeing) or whether he is claiming a tire or tires of Missy's patrol car rolled over his body.

For these reasons, I find genuine issues of material fact exist regarding Plaintiff's excessive force claims against Missy.

    B.    <u>Law Library</u>

Plaintiff claims he was denied the use of the law library by Separate Defendant Kisselburg and Separate Defendant Pruitt while incarcerated in the NCDC. ECF No. 14, p. 7. Separate Defendants argue Plaintiff was taken to the law library, but even if he was not, his constitutional rights were not violated because he has no injury from the denial.

The Supreme Court has held that "the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Bounds v. Smith,* 430 U.S. 817, 828 (1977). Nevertheless, *Bounds* "did not create an abstract, freestanding right to a law library or legal assistance." *Lewis v. Casey,* 518 U.S. 343, 351 (1996). Instead, prison officials must provide inmates with "meaningful access to the courts," *Bounds,* 430 U.S. at 824, and providing a law library is merely one way to comply with this obligation. *See Bear v. Fayram,* 650 F.3d 1120, 1123 (8th Cir. 2011) (the constitutional requirement of access to the courts may be satisfied in a number of ways including, prison libraries, jailhouse lawyers, private lawyers on contract with the prison, or some combination of these and other methods). However, an inmate has no standing to pursue an access claim unless

he can demonstrate that he suffered prejudice or actual injury as a result of the prison officials' conduct. *See Lewis,* 518 U.S. at 351-2; *see also Farver v. Vilches,* 155 F.3d 978, 979-980 (8th Cir.1998) (per curiam); *Klinger v. Dep't of Corr.,* 107 F.3d 609, 617 (8th Cir.1997) (to prevail on an access-to-courts claim, inmate must show actual injury or prejudice even if denial of access to library is complete and systematic); *McMaster v. Pung,* 984 F.2d 948, 953 (8th Cir. 1993). "To prove a violation of the right of meaningful access to the courts, a prisoner must establish the state has not provided an opportunity to litigate a claim challenging the prisoner's sentence or conditions of confinement in a court of law, which resulted in actual injury, that is, the hindrance of a nonfrivolous and arguably meritorious underlying legal claim." *Hartsfield v. Nichols,* 511 F.3d 826, 831 (8th Cir. 2008) (citations omitted).

The record indicates Plaintiff was booked into the NCDC on February 15, 2012. ECF No. 63-3. Plaintiff was taken to the law library on February 28, 2012. ECF No. 63-3. Plaintiff was released from the NCDC on March 22, 2012. ECF No. 63-3.

In his Response to Separate Defendants' Motion for Summary Judgment, Plaintiff declares under penalty of perjury that he "was denied use of law library on several occasions." ECF No. 68. Plaintiff made no other response regarding his law library claim and Plaintiff failed to allege he was injured in any way by the alleged denial of law library access.

Accordingly, I find Plaintiff's denial of law library access fails as a matter of law. *See Lewis,* 518 U.S. at 351-2; *see also Farver,* 155 F.3d at 979-980; *Klinger,* 107 F.3d at 617; *McMaster,* 984 F.2d at 953.

    C.    <u>Recreation</u>

Plaintiff claims that Separate Defendant Martin and Kisselburg denied him outside

recreation for several days and when he was given outside recreation, Separate Defendant Martin made him where leg shackles, belly chain and handcuffs. ECF No. 17, p. 7. Plaintiff also claims Separate Defendant Martin and Kisselburg denied him indoor recreation. ECF No. 17, p. 8.

Separate Defendants argue Plaintiff was not denied outside recreation, but instead, that Plaintiff refused yard call because Separate Defendants required him to be restrained to go outside due to the fact he was a flight risk. Further, Separate Defendants argue even if Plaintiff were denied outside recreation for his entire incarceration at NCDC, this denial would fail to amount to a constitutional violation.

The Court construes Plaintiff's claims regarding lack of outdoor recreation as one for denial of exercise. A constitutional violation exists if Separate Defendants were deliberately indifferent to Plaintiff's exercise needs. *See Wishon v. Gammon,* 978 F.2d 446, 449 (8th Cir. 1992). Factors the Court should consider in reviewing Plaintiff's lack of exercise claim are: (1) the opportunity to be out of the cell; (2) the availability of recreation within the cell; (3) the size of the cell; and (4) the duration of confinement. *Id.* Additionally, the length of time Plaintiff was subjected to the harsh conditions is a critical factor in analyzing whether his constitutional rights were violated. *See Smith v. Copeland,* 87 F.3d 265, 269 (8th Cir. 1996).

The record indicates Plaintiff was booked into the NCDC on February 15, 2012 and was transferred to the Pike County Detention Center on March 22, 2012. ECF No. 63-3. According to the record the only outdoor recreation offered to Plaintiff was on March 1, 2012, but Plaintiff refused because he did not want to be restrained while on yard call. ECF No. 71, p. 19.

Even if Plaintiff were systematically denied outdoor recreation for his entire incarceration at the NCDC (thirty-five (35) days) his claim would fail to implicate the constitution. *See Rahman*

*X. v. Morgan,* 300 F.3d 970, 974 (8th Cir. 2002) (inmate denied outside recreation for three months failed to establish deliberate indifference to his health); *Phillips v. Norris*, 320 F.3d 844, 847 (8th Cir. 2003) (denial of exercise privileges for thirty-seven (37) days, while pushing the outer limits of acceptable restriction, does not constitute a constitutional violation). Accordingly, I find Plaintiff's claim for denial of outdoor recreation fails as a matter of law.

In his Amended Complaint, Plaintiff also argues he was denied indoor recreation while incarcerated at the NCDC because the NCDC is not equipped for indoor recreation. ECF No. 17, p. 8. Separate Defendants did not move for summary judgment on Plaintiff's indoor recreation claim, and therefore, the Court will not address it here.[6]

## IV.     CONCLUSION

Accordingly, I recommend Separate Defendants' Motion for Summary Judgment (ECF No. 62) be **GRANTED** in part and **DENIED** in part.  Specifically, it should be **GRANTED** as to Plaintiff's (1) denial of law library access and (2) denial of outside recreation claims.  Further, it should be **DENIED** as to Plaintiff's (1) excessive force claims and (2) denial of indoor recreation claims.  This leaves for later resolution Plaintiff's excessive force claims against Separate Defendant Missy and his denial of indoor recreation claims against Separate Defendants Kissleberg, Pruitt and Martin.

**The parties have fourteen (14)  days from receipt of the report and recommendation**

---

[6] The Court also notes that, in his Response to Separate Defendants' Motion for Summary Judgment, Plaintiff produced his declaration, photographs of the inside areas of the NCDC, and also the NCDC exercise policies all relating to his indoor recreation claim. ECF No. 38, pp. 3-5, 8. Separate Defendants did not file a Reply to Plaintiff's Response to address this evidence placed on the record. Accordingly, the Court assumes Separate Defendants did not intend to move for summary judgment on Plaintiff's indoor recreation claim.

in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.

DATED this 23rd day of October 2013.

>  /s/ Barry A. Bryant
>  HON. BARRY A. BRYANT
>  UNITED STATES MAGISTRATE JUDGE